[Crim. No. 1180.   In Bank.—October 28, 1904.]

## Ex Parte JOHN B. CLIFTON, on Habeas Corpus.

CRIMINAL LAW—SENTENCES FOR DISTINCT CRIMES—CREDITS FOR GOOD BEHAVIOR.—Where the accused was convicted of two distinct crimes, and was sentenced at the same time therefor for two distinct terms, one to commence upon the termination of the other, the credits for good behavior for which the prisoner is entitled under the act of 1889 are to be computed on each term separately, and not as though the two sentences constituted but one term.

APPLICATION for discharge under Writ of Habeas Corpus directed to the Warden of the State Prison at Folsom.

The facts are stated in the opinion of the court.

E. S. Wachorst, and Frank J. Murphy, for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

LORIGAN, J.—Petitioner seeks, upon *habeas corpus,* to be released from imprisonment in the state prison.

In September, 1897, he was convicted in the superior court of Los Angeles County on two separate charges of burglary in the second degree, and as punishment for the first offense was sentenced to imprisonment in Folsom for five years, and on the second was sentenced for a similar term in the same prison, the latter sentence to commence, as provided by section 669 of the Penal Code, at the expiration of the term of imprisonment imposed by the prior sentence. Having actually served (up to the time of filing this petition) a period of six years and eight months, and having earned, as he claims, credits for good behavior under section 20 of the act of 1889 (Stats. 1889, p. 410) to the extent of three years and six months, he insists that he is now entitled to be discharged from imprisonment.

The only point involved in this matter is whether, in computing the credits for good behavior to which petitioner is entitled, the two sentences of five years each are to be taken as constituting a continuous term of ten years, or do they constitute separate, distinct, and independent terms of five years each.

If, for the purpose of computing credits, the two terms con-

stitute a continuous or entire term of ten years, then peti-
tioner is entitled to his discharge, because, under the act, the
time he has served, added to the credits he has earned upon
the basis of a continuous term, has terminated his period of
imprisonment. On the other hand, if, under the act, the terms
are to be considered separate and distinct, the petitioner must
be remanded, as he has not served sufficient time and earned
sufficient credits upon the second term of imprisonment im-
posed to warrant his discharge.

The solution of this question must be determined from the
language of the act itself, read in the light of previous legis-
lation upon this subject. The only previous legislation on the
matter, necessary to be particularly considered, is that found
in the Statutes of 1867-1868, page 675, which upon the adop-
tion of the codes was substantially carried into the Penal
Code as section 1590 thereof, and which provided that in
deducting credits for good conduct in favor of a convict they
should be deducted from "the entire term of penal servitude
to which he has been sentenced." In *Ex parte Dalton*, 49
Cal. 465, this court held, where a person was convicted of two
offenses for which he was sentenced to ten years for each
offense, that within the intent of the statute, and as a basis for
allowing credits, "the entire term of penal servitude" must
be considered as twenty years; that each period of ten years
was but a part of the "entire term," and it is insisted by peti-
tioner that the same construction should be applied to the
provisions of section 20 of the act of 1889 upon the same
subject.

Undoubtedly this should be done if the language in both
sections of the statute were the same. But it is not. There is
a radical and essential difference between the provisions of
the original section 1590 of the Penal Code, construed in the
Dalton case, and the language employed in the act of 1889,
under which the matter at bar is to be determined.

Under the original section, considered in the Dalton case,
it was apparent, as the court decided, that it was the inten-
tion of the legislature, from the language used, that, for the
purpose of credit commutation in favor of a prisoner, cumu-
lative sentences of imprisonment should be considered as an
"entire term of penal servitude to which he has been sen-
tenced."

The Dalton case was decided in 1875, and at its session of 1877-1878 (Amendts. to Codes, 1877-1878, p. 124) the legislature amended the original section so as to provide that the credit deductions for good behavior of a prisoner "shall be allowed from his term," and the new act of 1889, now in force, contains the same language.

We think it is manifest from this amendment of the original section so soon after the decision in the Dalton case, providing that the deduction of credits in favor of a prisoner "shall be allowed from his term" and not from the "entire term . . . to which . . . he has been sentenced," that the legislature intended that such deductions, when cumulative sentences were imposed, should thereafter be made from the terms as they were served, treated, and considered as separate and independent terms of imprisonment, as, but for the comprehensive language in the original section, they would otherwise, in law, undoubtedly be.

If this were not the intention of the legislature, it cannot well be perceived, why, in the amendment and the subsequent act of 1889, such a radical difference in language was used than was employed in particularly defining the basis of commutation in the original section, particularly when we consider that the meaning of the language in that section had already received judicial construction immediately preceding the amendment, by the decision in the Dalton case, and its meaning as there employed placed beyond question.

If the legislature had intended that the same basis for commutation should obtain under the amendments as under the original section, it would not have departed from the plain and judicially construed language used in that section, and have provided for credit commutations from "his term" instead of from the "entire term . . . to which he has been sentenced."

It is clear that under the language of the original section it was intended to make the successive periods of imprisonment under cumulative sentences continuous for commutation purposes, and it is equally apparent by the subsequent amendment, and also under the present act, that it was intended to leave the terms, as the law leaves them, separate. If the provision of the act of 1889 had been inserted in the original section, instead of the language there employed, there

would be no room for contending that a prisoner's terms on cumulative sentences meant for commutation purposes the "entire term" of imprisonment to which he had been sentenced, because, in the absence of any language limiting or qualifying the use of the word "term," it must be given its legal significance, and, so given, each period of sentence prescribed under cumulative sentences is legally separate and distinct from the other, and there is nothing in common between them upon which such a contention could be sustained. The judicial records upon which such cumulative sentences are based are themselves separate and distinct; the offenses are different, and the convictions and judgments are distinct; the terms of imprisonment thereunder may be different in point of duration, as they are certainly separate in point of commencement, and are enforced under separate commitments; the term of each successive imprisonment commencing at the expiration of the prior term.

It was this legal separateness and distinctness between terms of imprisonment under cumulative sentences which the legislature in the original section intended, for the purpose of credit commutation to destroy, and which in clear and comprehensive language it effected, by making the "penal servitude to which a convict has been sentenced" an "entire term." When, however, in subsequently dealing with the subject it abandoned the definition of an "entire term," which it had theretofore created, and used simply the words "his term" it certainly intended that the word "term" should be employed in its legal significance, and to embrace the period solely which a prisoner was actually serving under a given sentence, treated as separate and distinct from any other sentence which, under an equally separate judgment, he would on its expiration be required to serve.

It is insisted by petitioner that his "entire term" and his "term" mean the same thing. Considered with relation to their places in the act of the legislature under discussion, we do not think so. In the original section it is the period to which the convict "has been sentenced," whether it be one term, or successive terms, which shall be treated as an entirety for commutation purposes, and is so defined by the legislature in that section. In the act of 1889 "his term," used without any words of further definition or qualification, in law,

means the term he is actually serving under a particular sentence, and considered as legally distinct from any other to which he has been sentenced, or which he may be required to subsequently serve under an independent and separate judgment of imprisonment.

Our conclusion, therefore, is, that when cumulative sentences are imposed, a prisoner is entitled to commutation credits for good behavior upon each term only as it is served, and not upon the separate terms to which he may have been sentenced treated as a continuous period of imprisonment, or as an entire term under the original section of the Penal Code as construed in the Dalton case.

The prisoner is remanded to the custody of the warden.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., Henshaw, J., and Beatty, C. J., concurred.